(No. 3094—

JOHN B. ANDERSON, RECEIVER BY APPOINTMENT OF THE CIRCUIT COURT OF WILL COUNTY, ILLINOIS, IN CASE NO. 39672, Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed June 13, 1939.*

BARR & BARR, for claimant.

JOHN E. CASSIDY, Attorney General; GLENN A. TREVOR, Assistant Attorney General, for respondent.

MR. JUSTICE YANTIS delivered the opinion of the court:

Claimant herein seeks damages of $41,000.00 alleged to have been caused by the construction of a bridge on Cass

Street over the Illinois Waterway in the City of Joliet, Illinois. The property in question lies immediately east of the Illinois Waterway on the north side of Cass Street and has a frontage of seventy-five feet on the latter. The rear of the lot angles northeast, and the longest side of such lot adjoins an alley on the east for a distance of one hundred thirty-two feet north and south. Prior to 1927 this property was occupied by the Joliet Sheet Metal Company. In that year the company sold the property to William J. Kexel and Joseph F. Skrinar, the former having previously had an interest in the above named company. They paid $18,500.00 for the property in 1927. Soon thereafter they removed the old frame buildings, leveled the ground, filled it in and rented it to a woman for a root-beer stand. Up to that time the waterway was known as the old I. & M. Canal, which with the Desplaines River, was afterwards made a part of the Illinois Waterway. About a year before the Illinois Waterway was constructed Kexel and Skrinar rented this piece of ground to an Edward Kelly for a gasoline service station. Kexel testified that Kelly understood he was to have a filling station located on the lot for only a temporary period. After the waterway was constructed they removed the filling station in pursuance of that understanding. Prior to the building of the waterway, there was a sales room and garage just east of this lot; then came a vacant lot and east of that was a three-story retail mercantile building. On the south side of the street there was an automobile sales room and garage and east of that a three-story brick and stone building. When Kexel and Skrinar bought the property they obtained a loan on it of $10,000.00 and in 1928 made a new mortgage for $12,500.00, which is still unpaid.

On August 8, 1931 Skrinar and his wife conveyed their undivided interest in the premises to the Joliet National Bank, apparently as security for a loan. On February 10, 1932 the Joliet National Bank was taken over by the comptroller of the currency and a receiver was appointed. On December 13, 1932 the Skrinars were adjudged bankrupt and a trustee was appointed. John E. Barr and the First National Bank of Joliet became the holders of the notes secured by the mortgage of $12,500.00 on the premises in question and at the March term of the Circuit Court of Will County in 1933, John B. Anderson was appointed for the purpose of prosecut-

ing this claim for damages. The order of his appointment contains this wording, "To prosecute a claim against the State of Illinois because of damages done to the property herein described, by the State of Illinois in the construction of the Illinois Waterway and particularly the Cass Street Bridge and its approaches;" also the following—"Pending the action by the receiver all parties are enjoined from prosecuting any claim against the State on account of any damages to said real estate because of the construction of the Illinois Waterway. The distribution of any recovery by said receiver and the priority rights of the several interested parties therein are reserved for further determination by the Circuit Court of Will County."

Thereafter the First National Bank also went into the hands of the receiver. Efforts for a settlement having failed, John B. Anderson as receiver filed this claim April 30, 1937 for resulting damages to property not taken. The claim recites that for many years the Desplaines River and the I. & M. Canal had been crossed at Cass Street by a public bridge extending east and west at grade; that under Section 20 of the Illinois Waterway Act if existing bridges were damaged or materially impaired, the Department of Public Works and Buildings should repair or reconstruct such public bridges and approaches; that commencing about May 15, 1932 and continuing until about December, 1932, the State of Illinois by and through the Department of Purchases and Construction, which at that time had the duties of the Department of Public Works and Buildings, constructed a new bridge across the Illinois Waterway on Cass Street; that to provide a clearance of sixteen and one-half (16½) feet the new bridge was constructed twenty (20) feet higher than the bridge previously in existence; that it became necessary as a result for the State to build approaches to the bridge; that the street and sidewalk in front of the property herein described had previously been level and at grade with the lot; that by building the bridge and east approach thereto, the grade had been raised in front of petitioner's property a distance of seven (7) feet at the east end and twenty (20) feet at the west end, resulting in a seven (7) per cent descending grade past claimant's property; that as a result ingress and egress to this property has been materially interfered with and said premises caused to be of little value. Claimant contends that im-

mediately prior to the construction of the present grade of the Cass Street approach, these premises were of the value of $50,000.00; that the fair cash market value thereafter was $9,000.00, and that the loss or damage sustained by claimant by reason of the construction is $41,000.00.

The complaint further recites that by an Act of the legislature approved July 6, 1935 the Act providing for the Department of Public Works and Buildings adjusting such claims was repealed, and claimant was informed that he would have to seek his relief in the Court of Claims. The claim further recites that the *Illinois Waterway Act* provides, under *Sec. 23* thereof that—

"The State shall be liable for all damages to real estate within a radius of the Illinois Waterway, which should be overflowed or otherwise damaged by reason of the construction, maintenance or operation of the Illinois Waterway and its appurtenances."

On July 1, 1935 Section 24 of the Waterway Act providing for the settlement of waterway claims by the department was repealed by the passage of House Bill No. 933.

On May 8, 1939 an amendment was filed to the claim by leave of court first had and obtained, in any by which claimant represents that the damages to the property heretofore described arose out of the construction of the east approach to the Cass Street bridge, and that prior to and subsequent to the construction of said approach and of the reconstruction of the Cass Street bridge, said street was a part of Illinois S. B. I. Route No. 22, and that the reconstruction of said bridge and of the approach thereto was for the purpose of carrying said Route No. 22 over the Illinois Deep Waterway, and was a part of the construction by the State of Illinois of a State-wide system of durable hard-surface roads upon the public highways of the State. Thus we find that while claimant originally predicated his claim upon the theory that said bridge and approach were a part of the Illinois Waterway construction project, he now contends in the amendment to his claim that the damages resulted from the construction of a part of the hard road improvement program.

A stipulation has been filed, stating that the bridge in question was constructed under the direction and supervision of the Department of Purchases and Construction; that prior to July, 1933 various conferences were had between claimant's representatives and the director of said department and there-

after with the director of the Department of Public Works and Buildings; also that more funds remained unexpended in the Illinois Waterway Special Fund prior to, during and after the completion of the bridge in question, than the amount necessary to pay for the construction of such bridge and its approach and of any damage that might arise out of same.

The Attorney General concedes in his argument that since the repeal of Section 24 of the Illinois Waterway Act in 1935 there can be no doubt that the Court of Claims has exclusive jurisdiction of a claim for damages resulting from the construction of the Illinois Waterway. The Attorney General as counsel for respondent submits three main points to be considered, i. e.:

1. The basis of recovery.

2. From what fund the damages, if any, are payable.

3. The right of the legislature to appropriate for the payment of such damages.

The Attorney General also submits that the measure of damages is the difference in the fair cash market value of the property not affected by the improvement and its fair cash market value as affected by it. He further limits this rule, that such decrease in valuation must be such as is attributable to the construction. Counsel for claimant agrees to the above rule, but respective counsel differ widely as to the weight and materiality of testimony by various witnesses as to the valuation of the property, both before and after the construction of the bridge approach. Claimant introduced evidence by a number of witnesses, both as to the value of the premises, and as to the undesirability of same in the operation of a business if there is a grade of seven (7) per cent running by the premises. Mr. Kexel, being one of the parties in interest for whom the claimant sues, testified that he has no personal knowledge of any sales with which to make comparison relative to the fair cash market value of this property; that in his opinion the fair cash market value in 1925 and in 1932 would be approximately the same; that according to the loan values in 1925 the value of the property was between $20,000.00 and $25,000.00. This witness further testified that the possibilities of value of the property immediately prior to the construction varied on account of the uncertainty of the grade that would be established on the street; also that

after 1932 the general economic conditions might have affected the salability of the property; further, that immediately before the construction of the bridge he would not have been willing to pay $20,000.00 for it with the uncertainty of the grade to be considered; that in 1928 he and Mr. Skrinar had one offer of $25,000.00 and one of $32,000.00, but that both of these were declined.

Mr. Stanley Munroe of the real estate firm of Munroe Brothers, of Joliet, a witness for claimant, fixed the valuation of the property prior to the construction of the approach at $18,000.00 and the value thereafter at $4,000.00.

Mr. Frank P. Lumley, associated with the Oliver Realty Company, called as a witness for claimant, concurred in these figures. This witness made a comparative study of the premises with properties on Wacker Drive in Chicago and visualized the possible improvements from a study thereof.

Mr. James E. Farrell, a witness for claimant, testified that he was the general manager of one of the larger department stores in Joliet; that while he was familiar with the fact that the Desplaines River carries sewage from the City of Chicago and vicinity, that he had never noticed any particular odor off the Desplaines River, and that except for the seven (7) per cent grade the property in question would be desirable for retail merchandising purposes.

Mr. Charles Graham, another witness for claimant, testified that he had handled the real estate and mortgage department for the Illinois Securities Company for ten years and that he had collaborated with the witnesses Munroe and Lumley to determine the valuation of the property in question. He concurred in their conclusion as to a value of $18,000.00 before the improvement and of $4,000.00 thereafter. He testified that he and the other witnesses visited the property together and discussed the values; that they were reasonably close together and agreed on the figures given. This witness testified that there has been a lot of optimism up to 1933 about the future of Cass Street property; that this enthusiasm resulted from the erection of a number of new buildings in 1928 and 1929, but that he does not recall any new buildings along either side of the Desplaines River within a distance of two hundred fifty feet from the edge of the river during the last six years. He further testified that in his opinion the location in question will never be particularly desirable with

the grade as it now exists and in such close proximity to the drainage canal; that irrespective of the grade the proximity of the property to the canal and the possibilities of the latter continuing to be used as it is make him believe that the people of Joliet have been very optimistic about Cass Street values.

The respondent introduced two witnesses on valuation, George R. Hill who has been exclusively engaged in the real estate business for thirty-five years in Joliet and Will County and Charles A. Noble who has been engaged in the real estate business for forty years in Joliet and Will County. All of the witnesses who have testified as to valuation have apparently had considerable experience and it is somewhat difficult to reconcile the wide difference in values as determined by them. Respondent's witness Mr. Hill placed the fair cash market value of the property for the highest and best use for which it was available, immediately prior to the construction of the bridge, at $5,000.00, and he fixed the valuation subsequent to the completion of the bridge at $3,500.00, or a decrease of $1,500.00. This witness has known the property for fifty-three years and was daily employed for sixteen years by a lumber firm at the corner of Cass and Desplaines immediately east of the bridge in question. He testified that the stream over which the bridge is built was formerly known as the Sanitary Canal; that when the Sanitary District Canal was constructed a concrete wall was built along its banks; that a number of years ago this wall was taken out, the channel was widened and it was thereafter known as the Sanitary District and Illinois Waterway; that at other times it has been known as the Desplaines River and as a part of the I. & M. Canal. This witness also testified that the property immediately adjoining the one in question had been sold prior to the building of the new bridge to Voight Brothers for a garage, and that they paid $3,900.00 for that lot which measured 66' x 150'. Mr. Hill further testified that he had measured the distance from the level of the ground at the front of the lot in question to the top of the approach to determine how high the approach is above such property; that he found by actual measurement that at the east end of the property the approach is three feet above the surface; that at the west end about eight or nine feet above the level of the property.

The other witness, Mr. Noble, fixed the valuation of the property prior to the construction at $4,500.00 and after the construction at $1,500.00. An appraisal made by or for the Division of Waterways, as shown by the latter's report filed herein on May 13, 1939 shows a valuation appraisal by a Mr. Briggs in 1930 at $18,500 and another appraisal by a Mr. Mills in 1932 at $11,100.00. The latter appraiser fixed the value of the premises after the improvement at $9,146.40, and upon the basis of these figures the State at that time offered $2,000.00 in full settlement of the claim, but this offer was declined.

The court has carefully studied the testimony of the several witnesses as to values and the facts upon which these opinions of value rest. The members of the court have also made a recent inspection of the property and of its surroundings. We had previously had occasion to consider the valuation of property in this immediate vicinity, and of the damage resulting thereto from a construction of this improvement, in the cases of *Fred Grassle* vs. *State*, 8 C. C. R. 150 and the cases of *Stein, et al.*, 8 C. C. R. 251. In all of these former cases some of the same witnesses appeared and claimants were represented by the same counsel. In the claim filed in the Stein matter it was represented that in 1932 the State of Illinois was engaged in the construction of the Illinois Waterway through the City of Joliet, following in general the bed of the Desplaines River and the I. & M. Canal; that for a longer time than anyone living recalls, the river and canal were crossed by a public bridge at grade extending from east to west on Cass Street. In those cases claimants, by counsel, and the Department of Public Works and Buildings, stipulated that their claims should be submitted to the Court of Claims for determination and that an award, if any should be made, should be paid by the Department of Public Works and Buildings as a waterway claim, and not by appropriations by the legislature for the payment of awards by the Court of Claims as in other cases. The Grassle case was decided in September, 1934. In our recent inspection of the premises we have been able to view the apparent effect of the Cass Street bridge construction upon the Grassle property since 1934 when the claim for damages thereto was awarded. From a consideration of all the evidence and from its inspection of the premises for which damages are sought, the court is of

the opinion that the difference in market value of the property before and after completion of the said Cass Street bridge and its approach is not in excess of $4,500.00, and that if an award is made for such sum the owners of said premises will be justly and fully compensated for the damages they have sustained.

We further believe, upon the second question suggested by the Attorney General, that the award should be payable as damages incurred in the course of the construction of the Illinois Waterway. In the amendment to the complaint herein filed, counsel submits that the construction of the Cass Street bridge and the approach thereto were made as a part of Illinois S. B. I. Route No. 22 and that such construction was for the purpose of carrying said route over the Illinois Deep Waterway and was a part of the construction, by the State, of a state-wide system of durable hard-surfaced roads upon the public highways of Illinois; further, if there is an insufficient amount of money in the Illinois Waterway Fund out of which to pay any award entered herein, that such award might be paid by an appropriation from funds available for highway construction. This position is a distinct departure from the averments contained in the original complaint, wherein claimants described and referred to said bridge and its approach as a part of the construction of the Illinois Waterway. The latter position was in accord with the position previously taken by counsel for claimant in the Grassle, Stein and other cases above referred to. The claim recites and the evidence shows, that there was a bridge across the river and the I. & M. Canal at Cass Street from the time of memory of living men, and that Cass Street was a part of said Route No. 22, and that the traffic over such route passed over and across the canal by means of the then existing bridge. Counsel for claimant cites that provision of our statutes which reads—

"If in the construction of the 'Illinois Waterway' present bridges are damaged or materially impaired, the Department of Purchases and Construction shall repair or reconstruct present public bridges and approaches. * * * (Ill. Rev. Statutes, 1937, Ch. 19, Sec. 98.)"

There is nothing in the record indicating that the Cass Street bridge was unusable because of age, or of insufficient strength to bear the loads imposed by traffic or that it was of insufficient width or clearance to permit the use thereof for

traffic. So far as the demand for highway purposes are concerned there is nothing in the record that indicates there was a need for the reconstruction of said bridge or the building of an inclined approach thereto. It does appear however, that the canal was at the time in question being reconstructed as a part of the Illinois Deep Waterway Project, and that as a part of such program it was deemed necessary to elevate the Cass Street bridge to aid in carrying out the purposes of the Deep Waterway.

Counsel for claimant have questioned the consistency of the Attorney General's position in opinions given by the latter's office in regard to this question. He refers to the Attorney General's opinions of 1930 at page 603, wherein it is stated that bridges over the Illinois Deep Waterway on S. B. I. routes can be built out of Road Funds. The Assistant Attorney General appearing for respondent cites the opinion of the Attorney General in opinions of 1929 at page 255:

"In answer to your second question, will say that if the reconstruction or replacement of existing bridges which are now adequate and serviceable for highway purposes is made necessary by the building of the waterway, then in my opinion the cost of such reconstruction would properly be chargeable to deep waterway construction and would have to be paid out of the waterway fund, and that in view of the provisions of the canal section of the Constitution, the General Assembly is without authority to make additional appropriations for the reconstruction of such bridges."

We believe the distinction as set out in the latter opinion is material in the present case, i. e. where it appears that the reconstruction or replacement of the bridge is shown to be for and in connection with the building or the improvement of the waterway, the building is chargeable to the Waterway Fund, and in view of the provision of *Section 1* of *Article 14* of the *Constitution* of Illinois, the only funds that can legitimately be used in such improvement are those derived from the $20,000,000.00 bond limit or the surplus earnings of the waterway, and the legislature cannot make valid appropriations of other funds from the State Treasury therefor.

The province of the Court of Claims is to determine the propriety and amount of an award, if any, in a given case. The making of an appropriation therefor, and the payment thereof, are not matters in which this court presumes to dictate. It is necessary however, that in recommending an award to the legislature for its favorable action, we should indicate our opinion as to the validity of such appropriations, if made.

We believe that the award herein made would be validly payable out of any funds available for the building, enlargement, maintenance or extension of the I. & M. Canal or of the Illinois Deep Waterway. An award is therefore hereby made in favor of claimant in the sum of $4,500.00, payable from such funds as may be available for the payment of claims and demands growing out of the construction or maintenance of the I. & M. Canal or the Illinois Deep Waterway.